O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| CRAIG ROSS; NATALIE OPERSTEIN, <br> Plaintiffs, <br> v. <br> THE BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY, <br> Defendant. | Case № 2:16-cv-03778-ODW-JC <br><br> **ORDER DENYING PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION [1]** |

## I. INTRODUCTION

On May 31, 2016, Plaintiffs Craig Ross and Dr. Natalie Operstein applied ex parte for a temporary restraining order and an order to show cause re: preliminary injunction against Defendant Board of Trustees of California State University ("CSU"), which seeks to enjoin Defendant from terminating Dr. Operstein's employment. For the reasons discussed below, the Court **DENIES** Plaintiffs' application. (ECF No. 1.)

///

## II.   DISCUSSION

Plaintiffs state that this application for a temporary restraining order and preliminary injunction is made to prevent the termination of Dr. Natalie Operstein's employment pending completion of an ongoing Equal Employment Opportunity Commission ("EEOC") investigation into the circumstances surrounding her dispute with her employer. However, this application is more accurately a request that the Court order CSU to: (1) reverse its June 1, 2015 decision to deny Dr. Operstein's application for early tenure and promotion, (2) rescind its May 27, 2016 decision to end her Assistant Professor appointee employment with the university, and (3) reinstate her employment as a tenure-track professor.

Dr. Operstein became a probationary faculty member at California State University at Fullerton in 2011. Probationary faculty are typically considered for tenure during their sixth probationary year, but are reviewed at regular intervals throughout the probationary period and must be reappointed in order to continue the probationary cycle. (Graboyes Decl. ¶ 5, ECF No. 12.) Probationary faculty may also request early tenure prior to their sixth probationary year. (*Id.* ¶ 6.)

CSU's tenure review process is required by California Education Code section 89500. (*Id.* ¶ 4.) In addition, University Policy Statement ("UPS") 210.000 defines the policies and procedures that govern retention, promotion, and tenure of faculty members ("RTP"). (*Id.*) UPS 210.000 provides that faculty members shall demonstrate continued excellence in teaching, regular publication of scholarly articles and notes, publication in peer-reviewed journals, and service. (*Id.* ¶ 9.)

In order to be reappointed and continue in the probationary cycle, as well as to request tenure or early tenure, probationary faculty must submit a Portfolio and Appendices, which are then reviewed at various levels within the University. (*Id.* ¶ 7.) The levels of review are conducted by the Department Personnel Committee, the Department Chair, the Dean, in certain circumstances the Faculty Personnel Committee, and finally the Provost. The Provost makes the final decision; all other

levels are recommendations to the Provost.  (*Id.*)

The faculty member under review is given a copy of the recommendation and written reasons for it.  (*Id.* ¶ 8.)  The faculty member may then submit a rebuttal statement or response.  A copy of the rebuttal statement or response accompanies the RTP File for all future levels of review.  (*Id.*)

On September 2, 2014, Dr. Operstein applied for early tenure and promotion. (*Id.* ¶ 11.)  Dr. Operstein's review took place between September 2, 2014 and June 1, 2015.  (*Id.* ¶ 12.)  Based on a review of her RTP file, it was found that Dr. Operstein did not met the standards of UPS 210.000 and the standards of the Department of Personnel based on her lack of continued growth, failure to address concerns raised in past review cycles, and insufficient documentation of her accomplishments.  (*Id.* ¶¶ 13, 15.)  In addition, it was found that Dr. Operstein had not demonstrated the collegiality expected of a successful faculty member as described in UPS 210.000.II.3.a.  (*Id.* ¶ 14.)

On June 1, 2015, CSU sent Dr. Operstein a letter notifying her that she would not receive early tenure and would not be reappointed to a further probationary year. (*Id.* ¶ 15.)  Instead, the letter stated that her employment as an academic appointee would be terminated effective May 27, 2016, which was the close of the next academic year.  (*Id.* ¶ 17.)  Dr. Operstein confirmed receipt of the letter on June 13, 2015. (*Id.*)

In 2012, Dr. Operstein claims that CSU instituted a new policy of changing the ethnicity of campus faculty to mirror that of the student body (dominated mostly by Hispanic students), and that she has been systematically and continually harassed and discriminated against by CSU's officials, supervisors, and employees.  (Memorandum of Points and Authorities ("Mem. P. & A.") 4, ECF No. 2.)  However, Dr. Operstein provides little to no evidence for either of these propositions.

She claims that her purported lack of progress was simply a pretext for CSU denying her promotion and tenure and ultimately terminating her.  (*Id.*)  Indeed, she

claims that during the whole period of the tenure-track contract, she demonstrated strong and impeccable performance in each of the three required areas—scholarship, teaching, and service to profession, university, and community.  (*Id.* at 4.)

Between March 2013 and May 2014, Dr. Operstein made several internal discrimination complaints regarding a male coworker, and in January 2015, February 2015, and May 2015, she claimed that her negative evaluations were discriminatory and retaliatory.  (*Id.* at 13.)  In March 2015, she filed discrimination complaint with the EEOC, and in May 2015, she filed a retaliation complaint with the EEOC.   (*Id.* 14.)  On May 16, 2016, she requested that the EEOC seek a preliminary injunction preventing CSU from terminating her employment.  (Ross Decl. ¶ 6, ECF No. 3.)  Dr. Operstein is yet to receive a response.  (*Id.*)  In addition, Plaintiffs have not yet received a right to sue letter from the EEOC, and as such, Plaintiffs cannot file a Complaint with this Court.

On May 31, 2016, Plaintiffs filed this ex parte application for a temporary restraining order and order to show cause re: preliminary injunction, seeking to maintain the status quo of Dr. Operstein's employment as it existed on or before May 27, 2016. (ECF No. 1.)  That application is now before the Court for consideration.

The law of the circuit is that in a "limited class of cases" a district court has jurisdiction to grant a preliminary injunction in a Title VII case before the completion of the administrative process in order to maintain the status quo.  *Duke v. Langdon*, 695 F.2d 1136, 1137 (9th Cir. 1983).  This rule applies to federal employees as well as to private employees.  *See Porter v. Adams*, 639 F.2d 273, 278 (5th Cir. 1981); *McGinnis v. United States Postal Service*, 512 F. Supp. 517, 521 (N.D. Cal. 1980).

"The usual tests for a preliminary injunction apply to employment discrimination cases." *Anderson v. United States*, 612 F.2d 1112, 1116 (9th Cir. 1980).  In addition, "the standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).  As such, one

moving for a preliminary injunction must demonstrate either probable success on the merits and irreparable injury, or that serious questions are raised and the balance of hardships are tipped sharply in his favor. *Anderson,* 612 F.2d at 1115.

The Court need not address whether Dr. Operstein has made a showing of probable success on the merits or whether serious questions are raised because the Court finds that she has not demonstrated either irreparable injury or that the balance of hardships tips sharply in her favor. Weighing the hardships of the parties, it is apparent that if Dr. Operstein ultimately prevails, she can regain her job with back pay, and thus will have suffered no irreparable harm absent the injunction. However, if CSU ultimately prevails, then forcing the University to retain a potentially undesirable employee could adversely affect the public interest in ways that could not subsequently be remedied. In addition, CSU may suffer the loss of benefit of some other employee's services and loss of morale from having to retain an employee beyond the time it wished to discharge her.

The Court has reviewed the declarations presented by Plaintiffs in support of the ex parte application, and concludes that there is no such showing of irreparable injury or hardship so as to entitle her to an injunction. Therefore, this Court **DENIES** Plaintiffs' ex parte application for a temporary restraining order and preliminary injunction. (ECF No. 1.) This Order is without prejudice to Plaintiffs exhausting their administrative remedies.

**IT IS SO ORDERED.**

June 14, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**